## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF PUERTO RICO

**UNITED STATES OF AMERICA,**

    *Plaintiff,*

    v.

**GILBERTO J. HERNÁNDEZ-MARÍN,**

    *Defendant.*

**CRIMINAL NO. 19-133 (DRD)**

### OPINION AND ORDER

Pending before the Court is Defendant, Gilberto J. Hernández-Marín's *Motion to Suppress Illegally Obtained Evidence. See* Docket No. 32. The Government filed its respective opposition thereto. *See* Docket No. 36. Accordingly, a *Suppression Hearing* was held afterwards. Subsequently, the Court instructed the parties to submit supplemental briefs in order to properly analyze the elements of the instant controversy and rule upon the pending request for suppression.

The Defendant and the Government, hence, filed a *Supplemental Brief in Support to Motion to Suppress* and *Supplemental Brief in Opposition to Motion to Suppress*, respectively. *See* Docket Nos. 50 and 51. In its *Supplemental Brief,* the Government averred that the Defendant lacked standing to challenge the search because he did not have a reasonable expectation of privacy. *See* Docket No. 51. As a result thereof, the Court entered an Order "for the Defendant to brief the Court on whether he had a reasonable expectation of privacy in the Dodge RAM Pickup truck he was using on February 16, 2019." *See* Docket No. 52. The Defendant complied with the Court's Order while also requesting a *Further Suppression Hearing* wherein the

Defendant would testify as to his standing to challenge the search of the Dodge RAM pick-up truck. *See* Docket No. 54. The Court granted the motion and upon the *Further Suppression Hearing* instructed the parties to again submit their arguments in writing. Accordingly, the Defendant and the Government filed a *Motion in Compliance with Order at Docket 56. See* Dockets Nos. 62 and 65, respectively.

The Court is now duly briefed and ready to rule upon the instant matter.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

On December 18, 2019, a *Suppression Hearing* was held. The sole witness during the initial Suppression Hearing was Trujillo Alto Municipal Police Officer (hereinafter, "TAMP") Greg Cruz Figueroa.  *See Suppression Hearing Transcript*, Docket No. 49 at 4. Mr. Cruz Figueroa is the municipal police officer that intervened with the Defendant on the early morning of February 16, 2019. *Id.* at 7. According to Agent Cruz, on said date, he was patrolling in his assigned K-9 patrol car on Route 846 at approximately 1:30 to 2:00 in the morning. *See Id.* at 7-8. Agent Cruz testified that during his patrol "[he] received a call where allegedly some shots fired had been reported", "around 1:40, 1:45 . . . [in the] early morning hours." *Id.* at 8-9. Agent Cruz stated that he stopped at a parking lot of the commercial complex, University City "because it was the time that the businesses under the public order – code would begin shutting down their businesses." *Id.*

Suddenly, the Agent "observed a Dodge Ram vehicle driving, white in color, heading toward the peripheral road, and the same vehicle came into the Total gas station. And [he] noticed that the vehicle -- it drove in -- had tinted windows. For that purpose and reason [he] proceeded to drive to the vehicle. [Agent Cruz] turned on [his] patrol car lights, the emergency lights, and [] turned on the siren so that it would stop." *Id.* at 9. As the Defendant quickly stopped,

Agent Cruz proceeded to get out of his unit and approach the Defendant to inform him the reason for the intervention, to wit, the tint on the windows that was in violation of Traffic Law 22. *See Id.* at 10. According to Agent Cruz, "[i]t was a Dodge Ram pickup truck, and the vehicle windows were completely dark" and there were approximately six (6) windows "between the windshield and the rear window and the side windows." *Id.* All windows were tinted. *See Id*; *see also* Docket Nos. 42-1 at 1-2. Agent Cruz testified that although it was approximately 2:00 a.m. when he identified the Dodge Ram pickup truck, the visibility at Road 846 where the Defendant was transiting was "quite lit". *See Id.* at 13. He then informed the Defendant he was going to perform a test of the tint on the windows with the photometer. *See Id.*

When performing the photometer test, Agent Cruz asked the Defendant to open the door because "the part of the transmitter which is the box that gives [him] the amount of light being transmitted, the height does not allow [the Police Officer] to see the screen that indicates, the transmitter." *Id.* at 16. As Agent Cruz is 5'7 tall "[his] height does not allow [him] to see the machine." *Id.* Agent Cruz initially performed the test on the driver's side door. *See Id.* at 24. Then, he proceeded to inspect the rear passenger left door. *See Id.* "When the driver opened the [rear passenger left] door to perform the test, while [Agent Cruz] was performing the test Sergeant Quinones, the shift supervisor, noticed the firearm that was located in the rear portion." *Id.* at 25. Upon Sergeant Quiñones mentioning of the existence of a firearm, Agent Cruz testified that "[he] observed a firearm with an extended magazine in the rear", specifically, "on the floor." *Id.*

Accordingly, Agent Cruz saw Sergeant Quinones seizing the firearm with his own eyes. *See Id.* The firearm that was seized was a "AK-47, Zastava -- model PAP92 of the Zastava model" and

black in color. *Id.*; *see* Docket No. 49-1 at 4. According to Agent Cruz, the person who took control of the firearm when it was taken out of the vehicle was Sergeant Quiñones. *Id.*

Upon query performed by the Puerto Rico Police Department weapons registry database, it was revealed that the rifle had not been duly registered in Puerto Rico. The Defendant was immediately placed under arrest for violation of the Puerto Rico Weapons Law. His Miranda Rights were accordingly read to the Defendant followed by an inventory search of the RAM Pickup truck upon which one (1) .40 caliber Taurus Pistol Model PT11, bearing serial number TLP10486, loaded with fourteen (14) rounds of .40 caliber ammunition, registered under the name of the Defendant was found. The Defendant possesses a weapons' permit solely for shooting practice. *See Id.* ¶ 7.

Subsequently, the TAMP contacted ATF Task Force Officers (hereinafter, "TFO") assigned to the Municipality of San Juan field office for assistance in the investigation as part of the Federal Firearms Initiative. Upon response from the TFO, and encountering the Defendant, TFOs advised him his Miranda Rights, and the Defendant signed the ATF Miranda Rights Form, yet refused to speak. *See Id.*, ¶ 8. During his interview with the TFO, the Defendant was asked as to the locations of other firearms registered under his name. The Defendant informed that some of the firearms were at his girlfriend's house located in the Municipality of Vega Baja and others were at his parents' residence in Trujillo Alto. Three (3) weapons were retrieved by the TAMP upon agreement with the Defendant's parents and girlfriend. *Id.*

Upon further investigation, the police found that the Defendant had four (4) firearms registered legally in possession. Thus, an inventory of all weapons was conducted and the only one found to be missing, in violation of the Puerto Rico Weapons Law as to registration was: One

(1) Multi-Caliber Rifle Make Aero Precision, Model X15, Serial Number X179407, registration 1439163. *Id.*

Thereafter, on February 21, 2019, a District Court Grand Jury returned a One-Count Indictment against the Defendant for possession of a machinegun in violation of 18 U.S.C. §§ 922(o) and 924(a)(2). *See* Docket No. 9. The Defendant filed a *Motion to Suppress* wherein he moves the Court to suppress all the evidence seized in or derived from the illegal seizure and searches of the automobile he was in possession of in the early morning hours of February 16, 2019. The Defendant contends that "[t]he seizure and search violated the Fourth Amendment to the U.S. Constitution and all of their fruits must be suppressed." *See* Docket No. 32 at 1. According to the Defendant, the alleged vehicle traffic stop did not occur, and it was an excuse to intervene with the Defendant without probable cause; the police lacked reasonable suspicion to justify a "frisk" of the car; thus, the search of the car was excessive in scope and intensity. *See* Docket No. 32 at 4, 6, 8.

In sum, the Defendant challenges the purported basis that "law enforcement officers had reasonable suspicion to make the traffic stop for tinted windows and could retrieve the firearm under the plain-view doctrine and automobile exception." *See* Docket No. 36 at 1. The Defendant avers that the reason for the traffic stop—illegal tinted windows—does not give TAMP probable cause to search the vehicle. *See* Docket 31 at 4. For this reason, the Defendant claims that the Court should suppress the evidence found as a result of the search and seizure following the traffic stop. The Court strongly disagrees.

## II. DISCUSSION

### A. Legality of the Traffic Stop and Seizure

The Fourth Amendment prohibits unreasonable searches and seizures. Terry v. Ohio, 392 U.S. 1, 9 (1968). Searches conducted without a warrant supported by probable cause are presumptively unreasonable absent a recognized exception to the warrant requirement. U.S. v. McGregor, 650 F.3d 813, 820 (1st Cir.2011). For instance, observation of a traffic offense can provide such an exception. Id.

Temporary detention of a driver is reasonable where probable cause exists that a traffic violation has or may have occurred. The police may stop a vehicle if "it was objectively reasonable for the officer[ ] who observed [the] vehicle to conclude that a traffic violation had occurred." U.S. v. Southerland, 486 F.3d 1355, 1358 (D.C.Cir.2007). Moreover, "[t]he police may initiate a stop even if the traffic violation is a minor one." Id. at 1359. In fact, "[a]n officer can stop a car if he sees a driver commit a traffic offense, even if the stop is just an excuse to investigate something else." McGregor, 650 F.3d at 820. Examples of minor traffic violation stops, which circuit courts have determined create probable cause to stop a vehicle, include an improperly displayed license plate, Southerland 486 F.3d at 1359, an illegal "tinted tag cover", U.S. v. Watson, 717 F.3d 196 (D.C. Cir. 2013), and a seatbelt violation, U.S. v. Tiru-Plaza, 766 F3d 111 (1st Cir. 2014). An officer can then conduct pat/frisk searches of the occupants and search the interior of the vehicle for protective purposes only if "he has some articulable, reasonable suspicion that the persons stopped may be dangerous." McGregor, 650 F.3d at 820. The Court, therefore, concludes that a traffic stop due to a tinted windows violation constitutes a proper search.

The First Circuit has identified a two-step inquiry for assessing the reasonableness of searches conducted in the context of a traffic stop. The first inquiry is whether the officer "was justified in making the stop," and second, whether "the protective search [was] reasonably related to the events justifying the stop, factoring in what happened and what [the officer] learned during the encounter." *Id.*

In the instant case, the Defendant challenges the legality of the traffic stop by arguing that the traffic stop did not occur "and was a pretext to intervene with defendant." *See* Docket 32 at 3. Under Puerto Rico Law, the use of tinted windows with percentage of visible light transmission of less than thirty and five percent (35%) constitute traffic violations punishable by a fine. *See* PR Laws Ann. Tit. 9, § 5285. The Defendant avers the truck was parked and not moving at the moment of the traffic stop. *See* Docket 32 at 5. Meanwhile the Government claims that the TAMP agents ordered a traffic stop when the truck was traveling through road 846. *See* Docket 36 at 3–4. However, the fact that the Dodge RAM pick-up truck had tinted windows is sufficient alone, regardless of whether the car was moving or not, to provide TAMP reason to believe the Defendant was violating at least one Puerto Rico traffic law and to order the driver to stop. *See* 9 L.P.R.A. § 5285. Upon performing the photometer test, all windows had a 20 percent visibility, below the 35% percent authorized by Puerto Rico law. *See* Docket No. 49 at 39. Thus, because "it was objectively reasonable for [PRPD agents] to conclude that a traffic violation had occurred," the Court concludes the stop of the Defendant's pick-up truck was lawful. Southerland, 486 F.3d at 1358.

Further, the Court finds immaterial the Defendant's argument claiming that TAMP officers should have sought out the radio call informing them that multiple shots were heard on road 846

instead of ordering Mr. Hernández-Marín to stop. *See* Docket 32 at 2. The Defendant's claim that the agents should have continued to the place where shots were heard does not invalidate the agent's traffic stop. Courts have determined that subjective motivations are irrelevant in determining whether a law enforcement officer can stop a vehicle. *See* U.S. v. Alcantar, 271 F.3d 731, 736 (8th Cir. 2001) ("The subjective intentions of an officer making the stop are irrelevant for the purpose of determining the validity of the stop.") (*citing* Whren, 517 U.S. 806 (1996)); ("It is well established ... that any traffic violation, no matter how minor, provides a police officer with probable cause to stop the driver of the vehicle.") (*citing* United States v. Pereira-Munoz, 59 F.3d 788, 790 (8th Cir. 1995)).

Under these circumstances, the TAMP's traffic stop as a result of the Defendant's violation to Puerto Rico law, to wit, tinted windows with 20% visibility as opposed to 35%, the lowest percent allowed, was objectively reasonable. *See* Arizona v. Johnson, 555 U.S. 323, 327 (2009); *see also* Docket No. 49 at 39. Accordingly, the traffic stop was lawful, and the first Terry condition was satisfied. *Id*. at 326–27 (*holding* that "in a traffic-stop setting, the first Terry condition—a lawful investigatory stop—is met whenever it is lawful for police to detain an automobile and its occupants pending inquiry into a vehicular violation.")

### B. Standing

The second Terry condition requires the Court to examine the *reasonableness of the search*. *See* Arizona v. Johnson, 555 U.S. 323, 326–27 (2009) ("To justify a patdown of the driver or a passenger during a traffic stop, however, just as in the case of a pedestrian reasonably suspected of criminal activity, *the police must harbor reasonable suspicion* that the person subjected to the frisk is armed and dangerous.") (emphasis ours). However, before reaching the

second step of the <u>Terry</u> test, the Court must first evaluate whether the Defendant has standing to challenge the search following the traffic stop. Consequently, if the Defendant lacks standing, the Court must not analyze the second <u>Terry</u> condition. Thus, to fulfill the standing requirement, the Defendant must show that he had subjective expectation of privacy when the agents ordered the traffic stop. (<u>U.S. v. Aguirre</u>, 839 F.2d 854, 856 (1st Cir. 1988) ("Before embarking upon the merits of a suppression challenge, a criminal defendant must show that he had a reasonable expectation of privacy in the area searched and in relation to the items seized.")

As a threshold matter, a defendant must show that he has standing to challenge the search. <u>Aguirre</u>, 839 F.2d at 856 (internal citations omitted). In order to establish standing, a defendant must demonstrate a "legitimate expectation of privacy in the area searched or the item seized." <u>United States v. Vilches-Navarrete</u>, 523 F.3d 1, 13 (1st Cir. 2008) (internal citations omitted). To succeed, the defendant "must show that he had both a subjective expectation of privacy and that society accepts that expectation as objectively reasonable." *Id.* (citing <u>California v. Greenwood</u>, 486 U.S. 35, 39 (1988)); *see* <u>United States v. Rheault</u>, 561 F.3d 55, 59 (1st Cir. 2009).

In the instant matter, the United States avers the Defendant "has not advanced any privacy interest in the vehicle and failed to address his standing to suppress the evidence seized by the police from a vehicle that did not belong to him." *See* Docket No. 36 at 5. Considering the Defendant has failed to establish a subjective expectation of privacy in the Dodge RAM pick-up truck, the United States concludes the Defendant does not have standing to claim an illegal search or seizure occurred.

Conversely, the Defendant follows Aguirre, 839 F.2d at 857 to claim that he had possession and control of the vehicle when stopped and thus had a reasonable expectation of privacy. *See* Docket No. 62 at 3. However, Mr. Hernández-Marín failed to bring testimony other than himself to prove possession, control or ownership of the Dodge RAM pick-up truck he was driving the night of February 16, 2019. In Aguirre, the Court held that because "[t]here was no evidence that Aguirre owned or leased the Mazda, or that it was registered to him. . . ." "[the] appellant had no expectation of privacy in the Mazda or its contents, and thus lacked 'standing' to pursue the matter." Aguirre, 839 F.2d at 856–57).

The First Circuit's standard on this issue is uncontroverted, an individual cannot have a legitimate expectation of privacy in a place where he lacks actual permission to be present. *See* United States v. Battle, 637 F.3d 44, 49 (1st Cir. 2011) (defendant's expectation of privacy was unreasonable, as he did not have actual permission to be in the residence); United States v. McCarthy, 77 F.3d 522, 535 (1st Cir. 1996) (defendant did not have legitimate expectation of privacy in items left at a trailer after he was told to vacate the trailer); United States v. Lnu, 544 F.3d 361, 366 (1st Cir. 2008) (defendant lacked reasonable expectation of privacy in storage locker that he neglected to pay rent on).

In the context of a vehicle search, a defendant must show "a property [or] a possessory interest in the automobile" to establish a reasonable expectation of privacy. U.S. v. Symonevich, 688 F.3d 12, 19 (1st Cir. 2012) That is, the defendant bears the burden of establishing "that he gained possession from the owner or someone with authority to grant possession." U.S. v. Valdez Hocker, 333 F.3d 1206, 1208 (10th Cir. 2003). There is "no bright-line rule that governs whether a person has a reasonable expectation of privacy in vehicle; instead the court considers a number

of factors." U.S. v. Almeida, 748 F.3d 41, 47 (1st Cir. 2014). The following factors are to be considered:

> Ownership, possession, and/or control; historical use of the property searched or the thing seized; ability to regulate access; the totality of the surrounding circumstances; the existence or nonexistence of a subjective anticipation of privacy; and the objective reasonableness of such an expectancy under the facts of a given case. We look, in short, to whether or not the individual though of the place (or the article) as a private one, and treated it as such.

Id. (citing Aguirre, 839 F.2d at 856-57).

The First Circuit addressed the issue of whether a defendant had a reasonable expectation of privacy in a truck he was driving, with the permission of the registered owner of the truck, in which counterfeit bills were seized. Almeida, 748 F.3d at 47. The First Circuit held that although the registered car owner gave the defendant permission to drive his vehicle part of the time, "he had 'only a casual possession' of the truck." Id. at 48. The First Circuit stressed that the defendant "did not own [the truck], and he [had] shown no pattern of repeated use or control over the truck that would allow [the court] to conclude that [the defendant's] possession of the truck was anything more than 'informal and temporary'." Id. Thus, the First Circuit concluded the defendant could not bring a challenge under the Fourth Amendment to the evidence recovered from the truck.

In the instant case, the Defendant did not meet the burden of establishing a legitimate possessory interest in the Dodge RAM pick-up truck. The Defendant claims he was the owner of the car because he bought it and had ownership of the keys. See Docket No. 62 at 7. However, the Defendant's statement bears an issue of credibility that the Court cannot resolve through a Motion to Suppress. For instance, the Defendant failed to bring forth outside evidence to prove ownership and possession of the Dodge RAM pick-up truck. That is, the Defendant does not even

make an assertion as to who granted him possession and control of the vehicle. Instead, the Defendant simply relies on the fact that he bought the car on the internet to an unknown person. *See* Docket No. 57 at 6. An unknown person to whom the Defendant allegedly paid $4,000.00 in cash in exchange for the vehicle, the keys, and a payment booklet. *See Id*. at 7–9, 18. An allegedly unknown person to whom the Defendant paid four months in advance in cash with the aforementioned payment booklet. *See Id*. In conclusion, the Defendant does not have standing to contest a search "where he does not establish a link between himself and the registered owner."[1] U.S. v. Eckhart, 569 F.3d 1263, 1275 (10th Cir. 2009).

Moreover, the Defendant has failed to show a pattern of repeated use or control over the truck that would allow the Court to conclude that his possession of the truck was anything more than "informal and temporary." U.S. v. Sanchez, 943 F.2d 110, 113-14 (1st Cir. 1991) (holding defendant lacked standing when he "had only casual possession of the car.") Considering there is no evidence or assertion presented by the Defendant demonstrating "the responsibility or control [he] had over the automobile other than the fact that he was driving it when stopped", U.S. v. Lochan, 674 F.2d 960, 965 (1st Cir. 1982), the Court concludes the Defendant lacks standing to challenge the search. Accordingly, the Court need not to enter into the second step of the Terry test as the Defendant did not have standing to challenge the search of the Dodge RAM pick-up truck.

### III. CONCLUSION

First, the Court concludes the TAMP's traffic stop based on the Defendant's traffic violation of having windows tinted below the allowed 35%, under Puerto Rico law, to wit, 20%,

---

[1] There is no proof that the Defendant is the registered owner of the vehicle.

was lawful. The police officers were in the process of examining the percentage of tint in the windows when they observed a rifle in the rear passenger seat of the Dodge RAM Pickup truck. Therefore, the Court finds that the finding of the rifle was incident to the intervention as to the tinted windows. Moreover, the Defendant lacks standing to challenge the constitutionality of the search and seizure following the traffic stop as the Defendant does not establish ownership of the Dodge Ram truck and hence has no expectation of privacy. Accordingly, the Defendant's *Motion to Suppress Illegally Obtained Evidence* (Docket No. 32) is hereby **DENIED.**

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 7th day of May, 2020.

*S/Daniel R. Domínguez*
Daniel R. Domínguez
United States District Judge